The STATE of Ohio, Appellee,

v.

JONES, Appellant.

[Cite as *State v. Jones*, 182 Ohio App.3d 183, 2009-Ohio-1742.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–07–1292.

Decided April 10, 2009.

184

Julia R. Bates, Lucas County Prosecuting Attorney, and Ian B. English, Assistant Prosecuting Attorney, for appellee.

Deborah Kovac Rump, for appellant.

SINGER, Judge.

{¶ 1} Appellant appeals the reimposition of his sentence for robbery and aggravated robbery following remand from his prior appeal. For the reasons that follow, we affirm.

{¶ 2} The facts in this case are more fully explained in our initial consideration of this matter in *State v. Jones*, 6th Dist. No. L–05–1232, 2007-Ohio-563, 2007 WL 431417.

{¶ 3} On Sunday, January 4, 2004, a masked gunman entered a Toledo church just after services were completed. The man first demanded money, then walked down the aisle, seizing a nine-year-old girl, placing a gun to her head, and demanding $500. When some parishioners gave the intruder money, he released the girl and left. A witness outside the church identified appellant, Lorenzo J. Jones, as the intruder.

{¶ 4} Appellant was named in a two-count indictment charging him with robbery and aggravated robbery with a firearm specification. Appellant was found guilty on both counts and the specification and was sentenced to 19 years'

186

imprisonment. His conviction was affirmed on appeal, but his sentence was vacated pursuant to *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, paragraph one of the syllabus. *Jones*, 2007-Ohio-563, 2007 WL 431417, ¶ 47.

{¶ 5} On remand, the trial court again imposed the same sentence. From this sentencing judgment, appellant now brings this appeal, setting forth in an initial and an amended brief the following three assignments of error:

{¶ 6} "I. The trial court erred by not holding that Aggravated Robbery and Robbery were allied offenses of similar import, thereby subjecting Jones to Double Jeopardy.

{¶ 7} "II. Jones' sentences were unconstitutional because they were not the shortest available, and were imposed consecutively.

{¶ 8} "[III.] The indictment in this case did not expressly charge the mens rea element of the crimes of aggravated robbery and robbery. As such, the defective indictment is a structural error and Jones' convictions for aggravated robbery and robbery, without the accompanying firearms specification, must be reversed."

## I. Allied Offenses

{¶ 9} In his first assignment of error, appellant insists that he should not have been sentenced for both robbery and aggravated robbery because these are allied offenses of similar import. The same issue was raised in appellant's first appeal, but found waived by appellant's failure to object in the trial court. *Jones*, 2007-Ohio-563, 2007 WL 431417, ¶ 46.

{¶ 10} On remand, appellant objected on the allied-offenses ground. The matter was briefed, but the trial court concluded that the offenses were not allied and overruled the objection.

{¶ 11} The Double Jeopardy Clauses of the Fifth Amendment and Section 10, Article I, Ohio Constitution, forbid an individual from being prosecuted successively or being cumulatively punished for the same offense. *State v. Rance* (1999), 85 Ohio St.3d 632, 634, 710 N.E.2d 699; *State v. Moss* (1982), 69 Ohio St.2d 515, 518, 23 O.O.3d 447, 433 N.E.2d 181. When two offenses statutorily constitute the same offense, the Fifth Amendment is implicated. *Rance* at 635, 710 N.E.2d 699. Whether variant offenses are to be treated as the same involves an analysis of the intent of the legislature, beginning with the multiple-count statute. Id. That statute, R.C. 2941.25, provides:

{¶ 12} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

{¶ 13} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

{¶ 14} The multiple-count statute exhibits a legislative intent that it is permissible for an offender to be punished for multiple offenses of dissimilar import, but not for allied offenses of similar import. "[I]f a defendant commits offenses of similar import separately or with a separate animus, he may be punished for both pursuant to R.C. 2941.25(B)." *Rance,* 85 Ohio St.3d at 636, 710 N.E.2d 699, citing *State v. Jones* (1997), 78 Ohio St.3d 12, 13–14, 676 N.E.2d 80.

{¶ 15} The analysis for recognizing allied offenses is a two-step procedure. "In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), courts are required to compare the elements of offenses in the abstract without considering the evidence in the case, but are not required to find an exact alignment of the elements. Instead, if, in comparing the elements of the offenses in the abstract, the offenses are so similar that the commission of one offense will necessarily result in commission of the other, then the offenses are allied offenses of similar import. (*State v. Rance* (1999), 85 Ohio St.3d 632, 710 N.E.2d 699, clarified.)" *State v. Cabrales,* 118 Ohio St.3d 54, 2008-Ohio-1625, 886 N.E.2d 181, paragraph one of the syllabus. " 'In the second step, the defendant's *conduct* is reviewed to determine whether the defendant can be convicted of both offenses. If the court finds either that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offenses.' " (Emphasis sic.) *Cabrales* at ¶ 14, quoting *State v. Blankenship* (1988), 38 Ohio St.3d 116, 117, 526 N.E.2d 816.

{¶ 16} Appellant was convicted of aggravated robbery with a firearm specification in violation of R.C. 2911.10(A)(1) and robbery in violation of R.C. 2911.02(A)(2).

{¶ 17} R.C. 2911.01(A)(1) provides:

{¶ 18} "(A) No person, in attempting or committing a theft offense, as defined in [R.C. 2913.01], or in fleeing immediately after the attempt or offense, shall do any of the following:

{¶ 19} "(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it * * *."

{¶ 20} R.C. 2911.02(A)(2) states:

{¶ 21} "(A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:

{¶ 22} "(1) * * *

{¶ 23} "(2) Inflict, attempt to inflict, or threaten to inflict physical harm on another * * *."

{¶ 24} The state directed the trial court's attention to *State v. Norman* (1999), 137 Ohio App.3d 184, 203, 738 N.E.2d 403. There, the First District Court of Appeals applied the *Rance* analysis on the same offenses we consider here, concluding:

{¶ 25} "Here, as charged in the indictment, aggravated robbery requires proof that while committing a theft offense, the offender had a deadly weapon and brandished it. See R.C. 2911.01(A)(1). Robbery, as stated in the indictment, requires proof that while committing a theft offense, the offender threatened or attempted to inflict physical harm on another. See R.C. 2911.02(A)(2). After aligning the statutory elements of each offense in the abstract, we are convinced that each offense requires proof of an element that the other does not. Robbery requires proof of the threat of physical harm; aggravated robbery requires proof of brandishing a deadly weapon. An element of aggravated robbery, brandishing the weapon, is not required to prove the commission of robbery; conversely, a threat of physical harm is not required to prove aggravated robbery."

{¶ 26} This is the analysis the trial court in this matter adopted and the analysis the state urges that we accept here.

{¶ 27} There has been a shift in the jurisprudence of allied offenses of similar import since *Norman*, indeed, since 2007, when the trial court considered this question. *Cabrales* clarified *Rance*, requiring not an exact alignment of the elements of the offenses, but a determination whether the offenses are so similar that the commission of one will necessarily result in commission of the other. *Cabrales*, 118 Ohio St.3d 54, 2008-Ohio-1625, 886 N.E.2d 181. Most recently, applying the *Cabrales* standard, the court found kidnapping to be an allied offense of similar import to aggravated robbery. *State v. Winn*, 121 Ohio St.3d 413, 2009-Ohio-1059, 905 N.E.2d 154, syllabus.

{¶ 28} Nevertheless, we hold that R.C. 2911.01(A)(1) and 2911.02(A)(2) are not allied offenses of similar import under either the *Rance* or *Cabrales* analysis. As articulated in *Norman*, 137 Ohio App.3d 184, 738 N.E.2d 403, clearly the elements of the two offenses do not align. Moreover, we do not see how the commission of one of these offenses necessarily results in the commission of the other. While brandishing a firearm may certainly constitute threatened harm, one can certainly commit robbery without a weapon. Aggravated robbery as a violation of R.C. 2911.01(A)(1) is not possible without a deadly weapon. Thus, it

would appear that the commission of a robbery will not *necessarily* result in an aggravated robbery and vice versa.

{¶ 29} Accordingly, appellant's first assignment of error is not well taken.

## II.  Sentencing

{¶ 30} In his second assignment of error, appellant suggests that the trial court's failure to impose the shortest available sentence and its imposition of consecutive sentences constituted a violation of the Ex Post Facto Clause and denied him due process of law.  Appellant states that he is aware that this court has rejected this argument, but that he has interposed the question to preserve the issue.

{¶ 31} As appellant noted, this court considered and rejected these arguments in *State v. Coleman*, 6th Dist. No. S–06–023, 2007-Ohio-448, 2007 WL 293171.  Our opinion on these issues is unchanged.  Accordingly, appellant's second assignment of error is not well taken.

## III.   *State v. Colon*

{¶ 32} In his third assignment of error, appellant suggests that he was charged identically to the defendant in *State v. Colon*, 118 Ohio St.3d 26, 2008-Ohio-1624, 885 N.E.2d 917 (*"Colon I"*), and that like that defendant, his indictment failed to state a mens rea for theft as an element of the crime of robbery.  The result, appellant insists, is the same type of "structural error" that mandated the reversal of Colon's conviction.

{¶ 33} Subsequent to *Colon I*, the Supreme Court of Ohio almost immediately issued a clarification of its original decision on reconsideration.  In *State v. Colon*, 119 Ohio St.3d 204, 2008-Ohio-3749, 893 N.E.2d 169, ¶ 5 (*"Colon II"*), the court made clear that the application of *Colon I* was prospective only, applying "only to those cases pending on the date *Colon I* was announced."  Moreover, the *Colon II* court observed, "structural-error analysis to a defective indictment is appropriate only in rare cases, such as *Colon I*, in which multiple errors at the trial follow the defective indictment.  In *Colon I*, the error in the indictment led to errors that 'permeate[d] the trial from beginning to end and put into question the reliability of the trial court in serving its function as a vehicle for determination of guilt or innocence.'  * * * Seldom will a defective indictment have this effect, and therefore, in most defective indictment cases, the court may analyze the error pursuant to Crim.R. 52(B) plain-error analysis."  Id. at ¶ 8, quoting *Colon I* at ¶ 23.

{¶ 34} In this matter, it is arguable that appellant's case was not pending at the time *Colon I* was announced.  Certainly, the guilt phase was complete and the matter was on remand for resentencing only.  Alternatively, it could be argued

that since the case was still pending in the trial court, it could be considered "pending" for *Colon II* purposes.

{¶ 35} We need not resolve this dispute. In this matter, unlike in *Colon I*, the omission of the mens rea element in the indictment did not "permeate" the trial. In this matter the trial court charged the jury that to find appellant committed or attempted to commit a theft offense as an element of both robbery and aggravated robbery, "you must find beyond a reasonable doubt that the defendant with purpose to deprive the owner of property knowingly obtained such property without the consent of the owner." The court then defined both "purpose" and "knowingly." Compare *Colon I* at ¶ 3. Unlike in *Colon I*, here the court expressly charged the jury with a mens rea for a theft offense. Consequently, absent permeation of the error in the charging instrument and an objection at trial, our analysis is a simple plain error examination under Crim.R. 52(B). *Colon II* at ¶ 8.

{¶ 36} "Under Crim.R. 52(B), 'plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.' By its very terms, the rule places three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial. First, there must be an error, i.e., a deviation from a legal rule. Second, the error must be plain. To be 'plain' within the meaning of Crim.R. 52(B), an error must be an 'obvious' defect in the trial proceedings. Third, the error must have affected 'substantial rights.' We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial." (Citations omitted.) *State v. Barnes* (2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240.

{¶ 37} In this matter, pursuant to *Colon I*, there was an error when the indictment failed to state a mens rea for theft. After *Colon*, this omission should have constituted an obvious error. Nevertheless, since the trial court corrected this omission in its instructions, we have no doubt that the omission did not affect the outcome of appellant's trial. Consequently, the omission constituted harmless error and must be disregarded. Crim.R. 52(A). Accordingly, appellant's third assignment of error is not well taken.

{¶ 38} On consideration whereof, the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.

Judgment affirmed.

SKOW, P.J., and HANDWORK, J., concur.